**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

ELAINE WANG,                                           :
                                                       :
                 Plaintiff,                            :    Civil Action No. 23-cv-03408
                                                       :
v.                                                     :    **COMPLAINT FOR VIOLATIONS OF**
                                                       :    **SECTIONS 14(a) AND 20(a) OF THE**
MOMENTIVE GLOBAL INC., LAUREN                          :    **SECURITIES EXCHANGE ACT OF**
ANTONOFF, SUSAN L. DECKER, DAVID                       :    **1934**
EBERSMAN, DANA L. EVAN, RYAN                           :
FINLEY, SAGAR GUPTA, ERIKA H.                          :    **JURY TRIAL DEMANDED**
JAMES, ZANDER LURIE, SHERYL                            :
SANDBERG, and BENJAMIN C. SPERO,                       :
                                                       :
                 Defendants.                           :
---------------------------------------------------------  :

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Momentive Inc. ("Momentive" or the

"Company") and the members of Momentive's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Momentive by affiliates of STG Partners, LLC ("STG").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on April 17, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Mercury Merger Sub, Inc. ("Merger Sub"), an indirect wholly-owned subsidiary of Mercury Bidco LLC ("Parent"), will merge with and into Momentive, with Momentive surviving the merger as a wholly-owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 13, 2023 (the "Merger Agreement"), each Momentive stockholder will receive $9.46 in cash (the "Merger Consideration") for each Momentive share owned.  Merger Sub and Parent are both affiliates of STG.

3.      As discussed below, Defendants have asked Momentive's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Momentive's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the NASDAQ

Stock Exchange, headquartered in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, an owner of Momentive stock and

has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Lauren Antonoff has served as a member of the Board since

2022.

11.     Individual Defendant Susan L. Decker has served as a member of the Board since

2017.

12.     Individual Defendant David Ebersman has served as a member of the Board since

2015 and is the Chair of the Board.

13.     Individual Defendant Dana L. Evan has served as a member of the Board since

2012.

14.     Individual Defendant Ryan Finley has served as a member of the Board since 1999.

15.    Individual Defendant Sagar Gupta has served as a member of the Board since 2022.

16.    Individual Defendant Erika H. James has served as a member of the Board since 2018.

17.    Individual Defendant Zander Lurie has served as a member of the Board since 2009 and is the Company's Chief Executive Officer.

18.    Individual Defendant Sheryl Sandberg has served as a member of the Board since 2015.

19.    Individual Defendant Benjamin C. Spero has served as a member of the Board since 2009.

20.    Defendant Momentive is a company incorporated under the laws of the State of Delaware and maintains its principal offices at One Curiosity Way, San Mateo, California 94403. The Company's stock trades on the NASDAQ Global Select Market under the symbol "MNTV."

21.    The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.    The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.    The Proposed Transaction

23.    Momentive provides Software-as-a-Service solutions that help businesses turn stakeholder feedback into action in the United States and internationally.  It offers survey software products under the SurveyMonkey brand, that enable customers to listen and take action on stakeholder feedback; GetFeedback Essentials that provides companies the tools to launch customer experience programs quickly by gathering feedback via email and across their websites, analyzing it in one place, and integrating with their Salesforce CRM platform; GetFeedback Pro,

which includes the Essentials features and adds feedback collection channels, advanced analytics, automation, and additional pre-built integrations; and GetFeedback Ultimate that comprises the GetFeedback Pro features and adds mobile apps as a feedback collection channel and enables single sign-on, as well as GetFeedback Direct and GetFeedback Digital.  The Company also provides Audience panel, which enables organizations to collect and analyze real-time actionable data from targeted panelists; Purpose-built insights solutions that offers a suite of solutions, such as brand and industry tracking, usage & attitudes, and concept, packaging, ad, name, message, and logo design testing; TechValidate, a marketing content automation solution; SurveyMonkey Apply, an application management solution; and Wufoo that helps users create web and mobile forms, collect file uploads, and receive online payments.  It serves financial services, internet, technology, healthcare, media and entertainment, consumer goods and retail, transportation and logistics, government agencies, manufacturing, energy, education, professional services, and non-profit organizations.  The Company was formerly known as SVMK Inc. and changed its name to Momentive Global Inc. in June 2021.  Momentive was founded in 1999 and is headquartered in San Mateo, California.

24.    On March 13, 2023, the Company announced the Proposed Transaction:

> SAN MATEO, Calif.--(BUSINESS WIRE)--Momentive (Nasdaq: MNTV), the maker of SurveyMonkey, today announced it has entered into a definitive agreement to be acquired by a consortium led by Symphony Technology Group (STG) in an all-cash transaction that values Momentive at approximately $1.5 billion. Under the terms of the agreement, Momentive shareholders will receive $9.46 per share, representing a premium of approximately 28% to the volume weighted average closing price of Momentive stock for the 10 trading days ending on March 13, 2023, and a 46% premium to the company's closing stock price on the day prior to media rumors regarding a potential sale on October 19, 2022.

> "This new chapter will enable Momentive to advance our long-term strategy and mission," said Zander Lurie, Momentive CEO. "STG's 20 years of investment experience in software, analytics, and data

companies will provide us with invaluable expertise as we scale our customer base and product suite. Today's volatile business climate necessitates that organizations consistently collect feedback from their stakeholders. That's where we shine."

"The transaction is the result of an extensive and careful process to review strategic alternatives by the Momentive board. The board believes this is the right path for delivering certain and attractive value for shareholders," said David Ebersman, chair of the Momentive Board of Directors. "The Momentive board voted unanimously in favor of the transaction."

"SurveyMonkey is the most iconic brand in survey technology and has a terrific reputation among individuals, teams, and enterprises for innovation and leadership, with an impressive combination of incredible ease of use and advanced enterprise capabilities and analytics," said J.T. Treadwell, Managing Director at STG. "We have long admired the company during our 20-year history of active investment in the insights and analytics sector, and are very excited to partner with the team at Momentive to build upon their excellent foundation. Together we will continue delivering exceptional value and innovation to individuals and enterprises globally."

### Approvals and Timing

The transaction, which was approved unanimously by the Momentive Board of Directors, is expected to close in the second or third quarter of 2023, subject to customary closing conditions, including approval by Momentive shareholders and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction, Momentive's common stock will no longer be listed on any public market. The company will continue to operate under the Momentive name and Momentive and SurveyMonkey brands.

### Advisors

Qatalyst Partners is serving as financial advisor to Momentive in connection with the proposed transaction. Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to Momentive.

Paul Hastings LLP is serving as legal counsel to STG. Silver Point acted as Sole Lead Arranger and provided committed debt financing in support of the acquisition.[1]

* * *

25.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Momentive's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    <u>The Materially Incomplete and Misleading Proxy Statement</u>**

26.    On April 17, 2023, Momentive filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.    The Proxy Statement fails to provide material information concerning financial projections by Momentive management and relied upon Qatalyst in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are

---

[1] *Momentive Global Enters into Definitive Agreement to Be Acquired by Symphony Technology Group for $1.5 Billion*, BUSINESS WIRE (Mar. 13, 2023), https://www.businesswire.com/news/home/20230313005820/en/Momentive-Global-Enters-into-Definitive-Agreement-to-Be-Acquired-by-Symphony-Technology-Group-for-1.5-Billion.

materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts: the April 2022 long-range plan, the November long-range plan, the March 2023 long-range plan, and the March 2023 extrapolations (collectively, the "Company Projections") and provided them to the Board and Qatalyst to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide certain information in the projections that Momentive management provided to the Board and Qatalyst.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Operating Income and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[2]

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Qatalyst's Financial Analyses*

32.     With respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy Statement

fails to disclose: (i) the terminal value of the Company; (ii) the inputs and assumptions underlying

the selected range of fully diluted enterprise value to next-12-months' estimated UFCF multiples

of 10.0x to 15.0x; (iii) the inputs and assumptions underlying the discount rates ranging from

12.0% to 14.5%; (iv) the weighted cost of capital of the Company; (v) the Company's outstanding

debt as of December 31, 2022; and (vi) the number of shares of Company stock outstanding on a

fully diluted basis as of March 10, 2023.

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

33.    With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Qatalyst for the analysis based on the Analyst Projections as referenced in the Proxy Statement; and (ii) the basis for selecting the representative CY2023E revenue multiple range of 2.0x to 3.5x and CY2023E LFCF multiple range of 10.0x to 15.0x.

34.    With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each transaction selected by Qatalyst for the analysis based on the Analyst Projections as referenced in the Proxy Statement; and (ii) the basis for selecting the representative LTM revenue multiple range of 2.6x to 6.3x and NTM revenue multiple range of 2.3x to 5.9x.

35.    With respect to the retainer of Qatalyst as the Company's financial advisor, the Proxy Statement states that Qatalyst will be paid $2 million for "services previously rendered," but fails to disclose what those services are or when the services were rendered.

36.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were

negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Momentive within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Momentive, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Momentive, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Momentive, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 24, 2023

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

/s/ *Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4620
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*